## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF **MARTINA BLASINA ROMERO** | §<br>§<br>§<br>§ | MISC NO.: _____ |

---

## VERIFIED PETITION TO PERPETUATE TESTIMONY

---

### Introduction

This is an action under Federal Rule of Civil Procedure 27 to perpetuate testimony about a 39 year-old Honduran man who died a slow, painful, and avoidable death of bacterial meningitis while in federal immigration custody. Petitioner Martina Blasina Romero (hereinafter "Petitioner"), as the mother, next-of-kin, heir, legal representative and putative Administrator of the Estate of Ronal Francisco Romero hereby respectfully petitions this Court for an order authorizing depositions to perpetuate testimony of the individuals identified herein for use in an anticipated civil action pursuant to FED. R. CIV. P. 27(a)(1). As good cause for this Petition, through undersigned counsel she states as follows:

### JURISDICTION & VENUE

1.   This Court has federal-question jurisdiction over this Petition pursuant to 28 U.S.C. § 1331 and Federal Rule of Civil Procedure 27(a)(1). Subject-matter jurisdiction over Petitioner's anticipated claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b).

2.   Venue is proper in this Court because the acts or omissions that form the basis for Petitioner's anticipated litigation occurred within this District and Division. The witnesses whose testimony Petitioner seeks to perpetuate through deposition are believed to currently reside within this District

1

and Division. And the anticipated adverse parties reside within this District and Division. Accordingly, this Court is the proper venue.

<u>RULE 27 ALLEGATIONS</u>

**A.   PETITIONER EXPECTS TO BE A PARTY TO FEDERAL LITIGATION.[1]**

3.   Petitioner Martina Blasina Romero is the natural mother of Ronal Francisco Romero ("Mr. Romero"). She currently resides in Honduras.

4.   At 6:49 p.m. on May 16, 2018, Mr. Romero, a native and citizen of Honduras known to federal immigration officials as "Ronald Cruz," was pronounced dead at Valley Baptist Medical Center ("VBMC") in Harlingen, Texas.[2]

5.   According to ICE, Mr. Romero was arrested on May 9, 2018, while attempting to enter the United States without permission.[3]

6.   Mr. Romero remained in the custody of U.S. Customs and Border Protection ("CBP") at the McAllen Border Patrol Station and subsequently CBP's Central Processing facility for approximately six (6) days until May 14, 2018, when he entered ICE custody at the Port Isabel Detention Center ("PIDC") in Los Fresnos, Texas.[4]

7.   On the evening of May 15, 2018, Mr. Romero was admitted to VBMC and reportedly entered VMBC's Intensive Care Unit at 2:35 a.m. on May 16, 2018.

8.   Cameron County, Texas authorities performed an autopsy on Mr. Romero on Wednesday, May 23, 2018.

---

[1] Fed. R. Civ. P. 27(a)(1)(A).

[2] U.S. Immigration and Customs Enforcement ("ICE") News Release, "South Texas ICE detainee from Honduras passes away in local hospital," (May 18, 2018) *available at* https://www.ice.gov/news/releases/south-texas-ice-detainee-honduras-passes-away-local-hospital (last visited May 29, 2018). Copy attached hereto as Exhibit A.

[3] Ex. A.

[4] *Id.*

9.  The autopsy reportedly revealed Mr. Romero died from septic shock brought about by bacterial meningitis.

10. Cameron County and VBMC also reported that Mr. Romero experienced renal failure and ketoacidosis prior to his arrival at the hospital.

11. At Petitioner's request, Dr. Kris Sperry, formerly the Chief Medical Examiner for the State of Georgia, performed an independent autopsy on the body of Mr. Romero on Saturday, May 26, 2018.

12. Dr. Sperry concluded, based on his physical examination of Mr. Romero's body and limited information supplied to him by Cameron County authorities, that Mr. Romero's deadly form of bacterial meningitis began as an infection of the right middle ear and subsequently spread to the brain.

13. Though Mr. Romero's reported diabetes is listed as a contributing factor, Dr. Sperry did not observe kidney or artery damage consistent with long-term, uncontrolled diabetes.

14. Both autopsies suggest Mr. Romero likely died an agonizingly slow and excruciatingly painful death.

15. Based on the information currently available, Dr. Sperry concludes that Mr. Romero would have been intensely, visibly ill and in severe pain for several days prior to his admission to VBMC on the afternoon of May 15, 2018.

16. Mr. Romero's observable symptoms of illness would have included intense ear and head pain stemming from the pressure caused by the bacterial infection and growing build-up of pus in his right middle ear; clammy appearance and skin discoloration; fever; dehydration; and potential nausea and vomiting.

17. As the bacterial meningitis, ketoacidosis, renal failure, and septic shock progressed into what would be the final 72 hours of his life, Mr. Romero would have displayed increasing disorientation, confusion, and non-responsiveness, such that his mental deterioration would have become immediately obvious to any observer.

18.  Despite the obviousness and severity of symptoms surrounding Mr. Romero's serious medical need, there is presently no evidence that he received emergency medical care or was diagnosed with meningitis prior to his death during his CBP and ICE custody.

19.  According to Dr. Sperry, the majority of individuals who suffer from middle ear infections that could develop into meningitis survive because the intense pain they suffer prompts them to seek and receive healthcare before the infection spreads aggressively enough to cause septic shock and organ failure.

20.  Based on evidence gathered to date, Petitioner anticipates bringing claims against federal law enforcement officials and medical care providers under the Federal Tort Claims Act ("FTCA"). 28 U.S.C. § 1346(b). At minimum, her FTCA claims would sound Texas state law of wrongful death and survival actions for negligence and negligent infliction of emotional distress.

**B.  PETITIONER CANNOT PRESENTLY BRING THE ANTICIPATED LITIGATION.[5]**

21.  Several practical, legal, and prudential factors prevent Petitioner from bringing the anticipated litigation.

22.  Mr. Romero's body will not be returned to Honduras until June 5, 2018. He must then be reconnected with his family, mourned, and buried in his homeland prior to the establishment of his estate.

23.  VBMC's medical records department currently takes fifteen to twenty business days to process and fulfill requests for medical records. Obtaining Mr. Romero's complete medical records and seeking independent expert consultation regarding their meaning is an essential, pre-filing step in a case of this nature.

---

[5] Fed. R. Civ. P. 27(a)(1)(A).

24. Detention and medical records from ICE and CBP are essential to Petitioner's pre-suit investigation of this matter. These records may be obtained through Freedom of Information Act ("FOIA") once a detainee death review is completed and released. *See* 5 U.S.C. § 552(b)(7)(A). Congress has mandated the completion and release of such detainee death reviews within thirty days. Though ICE has yet to release its review of a detainee death in Prairieland, Texas on April 10, 2018, even if ICE met its Congressional deadline in this case, FOIA affords agencies up to thirty additional business days to fulfill requests. Consequently, the soonest Petitioner could expect to receive these records would be mid-August of 2018.

25.  Once Petitioner assembles and obtains independent consulting expert review of these essential records, the Federal Tort Claims Act requires her to provide notice to the federal government and wait six months before filing an action in federal court. 28 U.S.C. § 2675(a).

26. Thus, Petitioner will realistically not be able to institute an FTCA action arising out of the death of her son until February 2019, at the absolute earliest.

**C. SUBJECT MATTER OF THE PROSPECTIVE ACTION AND PETITIONER'S INTEREST.[6]**

27. The anticipated subject matter of the prospective action will be the acts and omissions of federal law enforcement officials employed by CBP and ICE while Mr. Romero was in federal custody.

28. With respect to establishing liability, the lived experiences of Mr. Romero in detention, and the specific actions taken or omitted by federal officials, will be critical.

29. With respect to proving damages, the nature and extent of in-custody, pre-death suffering by Mr. Romero as a result of federal officials' acts or omissions will be central.

30. Petitioner's interest in the prospective action arises from her status as the mother and next-of-kin of Mr. Romero. Because Mr. Romero's father is deceased and Mr. Romero was unmarried and

---

[6] Fed. R. Civ. P. 27(a)(1)(B).

had no known children, Ms. Romero is the holder of the wrongful death claims under Texas state law, Tex. Civ. Prac. & Rem. Code. Ann. § 71.004(a). As the putative Administratrix of Mr. Romero's Estate, she is the estate's survival claims pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 71.021(b). The substantive elements of these state-law claims supply the substantive basis for potential tort claims brought against federal actors under the FTCA. As the holder of these claims, Petitioner holds an interest in being able to bring them in federal court.

## D.  FACTS PETITIONER SEEKS TO ESTABLISH.[7]

31.  Petitioner seeks through this action and the proposed testimony she will elicit to establish the following facts:

  a.  Mr. Romero's physical appearance on each day of his detention from May 9, 2018 through May 16, 2018, including any indicators of illness, symptoms displayed, or mental and physical suffering observed by those in detention with him;

  b.  Words of Mr. Romero to fellow detainees and to government officials which may or may not have been recorded and memorialized by government officials in their records;

  c.  Actions taken by government officials in response to Mr. Romero's illness, as described from the perspective of detainees who observed such actions; and

  d.  Conditions of Mr. Romero's confinement during his detention from May 9, 2018 until May 16, 2018.

## E.  REASONS TO PERPETUATE TESTIMONY.[8]

32.  As a result of federal immigration law and policy and the nature of civil immigration detention for individuals who enter the United States without inspection through the McAllen Border Patrol Sector, Petitioner cannot reasonably expect to locate the vast majority of people with whom Mr. Romero was confined who would offer the anticipated, essential testimony set forth in Paragraphs 28a-d by the time she is able to institute her federal action in the early part of 2019.

---

[7] Fed. R. Civ. P. 27(a)(1)(C).
[8] Fed. R. Civ. P. 27(a)(1)(C).

33. Though each individual who was confined with Mr. Romero is presently known to CBP and ICE, their identities will in all likelihood not be made available to Petitioner until well after the institution of FTCA litigation in 2019. Indeed, Petitioner expects that the government will move to dismiss her claims, as it does in nearly all FTCA suits arising out of CBP and ICE detention conditions, and that government attorneys will seek and receive a stay of discovery until jurisdictional challenges raised in the government's motion is resolved. It could, therefore, be over a year before the non-governmental third-party witnesses who could testify regarding Mr. Romero's experiences will be disclosed to Petitioner.

34. By that time, it is highly likely than almost none of those witnesses will be available for deposition with this District, if at all. The vast majority will, based on current government statistics, be promptly deported to their home countries. At that point, locating these witnesses will be extraordinarily difficult, and their recollections regarding Mr. Romero's experiences could have eroded or become confused over time.

35. Those individuals who are not removed from the United States by the time Petitioner is able to bring her claims will have dispersed across the United States.

36. Accordingly, the essential, potentially dispositive testimony of individuals who were detained with Mr. Romero must be perpetuated now, while these witnesses are still available, and their memories are still reasonably reliable.

**F.  Expected Adverse Parties.[9]**

37. The **United States of America** is expected to be an adverse party to FTCA claims. Based on her investigation to date, Petitioner anticipates the acts and omissions of officers, agents, or employees of the **U.S. Department of Homeland Security**, specifically, its agency components **U.S. Customs**

---

[9] Fed. R. Civ. P. 27(a)(1)(D).

and Border Protection – Border Patrol, U.S. Immigration and Customs Enforcement – Enforcement and Removal Operations, and the Immigrant Health Services Corps, will likely form the basis of some or all FTCA claims.

38. The addresses of these anticipated adverse parties are:

    a. **United States of America**:

        i. United States Attorney's Office for the Southern District of Texas, Civil Division McAllen Division, c/o James Sturgis AUSA-in-Charge, Bentsen Tower, 1701 W. Highway 83, #600, McAllen, Texas 78501-5160

    b. **U.S. Department of Homeland Security**:

        i. Office of General Counsel, John. M. Mitnick, 245 Murray Lane, SW Mail Stop 0485 Washington, D.C. 20528-0485

    c. **U.S. Customs and Border Protection**:

        i. Office of Chief Counsel, Scott K. Falk, CBP Headquarters, 1300 Pennsylvania Ave. NW, Washington, D.C. 20229

        ii. U.S. Border Patrol Rio Grande Valley Sector, 4400 South Expressway 281, Edinburg, Texas 78542

        iii. U.S. Border Patrol McAllen Station, 3000 West Military Highway McAllen, Texas 78503

    d. **U.S. Immigration and Customs Enforcement**

        i. ICE Office of Principal Legal Advisor – District Court Litigation Division, Associate Legal Advisor Steven G. Ohrvall, 7701 N. Stemmons Frwy, 8th Floor, Dallas, Texas 75247

        ii. ICE Enforcement and Removal Operations, San Antonio Field Office, Port Isabel Assistant Field Office Director Joe Longoria, 27991 Buena Visata Blvd, Los Fresnos, Texas 78566

39. Petitioner notes that although the Department of Homeland Security's *Touhy* regulations, 6 C.F.R. §§ 5.41 *et seq.* do not apply to actions in which federal agents or the federal government is a party, *see, e.g., Watts v. Securities & Exchange Commission*, 482 F.3d 501 (D.C. Cir. 2007), she has complied with these regulations for this pre-suit proceeding because it is styled as a miscellaneous action.

**G. The Name, Address and Expected Substance of the Testimony of Each Deponent.**

40. Petitioner seeks an order permitting a two-stage Rule 27 deposition process. During Stage One, Petitioner seeks to depose one CBP official and one ICE official to ascertain the identities and current locations, if known, of any detainee witnesses who were detained with or otherwise had direct contact, nonincidental with Mr. Romero.[10] During Stage Two, Petitioner seeks to depose any detainee witnesses identified during Stage One.

41. Stage One Deponents and Expected Testimony:

    a.  Petitioner seeks an order permitting the deposition of **Manuel Padilla, Jr**., Chief Patrol Agent of the Rio Grande Valley Border Patrol Sector, U.S. Customs and Border Protection. His principal place of business is believed to be **4400 South Expressway 281, Edinburg, Texas** 78542 This deposition is expected to last no longer than two hours.

    b.  Petitioner seeks an order permitting the deposition of **Joe Longoria**, Assistant Field Office Director, Port Isabel Detention Center, San Antonio Field Office Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement. AFOD Longoria's principal place of business is believed to be 27991 Buena Vista Boulevard, Los Fresnos, Texas 78566.

    c.  Petitioner believes both of these officials should already have the names and be aware of each of these detained individuals who had substantial contact with Mr. Romero for at least two reasons. First, like all deaths in ICE custody, the agency is required to conduct a thorough detainee death review. Such review would necessitate identifying and, as available, interviewing people who came into contact with the decedent prior to his death. Second, because Mr. Romero died of bacterial meningitis, Petitioner believes VMBC and ICE were subject to mandatory reporting and identification requirements under Texas and potentially federal law.

    d.  Petitioner recognizes that the current pace of operations in the CBPs RGV BP Sector and in ICE's PIDC might make prompt scheduling of these deponents difficult. Accordingly, Petitioner would be amenable to conducting Stage One through a Rule 31 Deposition by Written Questions, provided the deponents and their agencies agree to supply the necessary information to identify witnesses Petitioner seeks to depose in Stage Two in an expedited manner.

42. Stage Two Deponents and Expected Testimony:

---

[10] Petitioner anticipates the government requesting and is amenable to entering into a limited-purpose protective order regarding the identities of these detained individuals in order to comply with the Privacy Act and federal laws governing the release of information about asylum-seekers.

    a.  Petitioner seeks an order permitting the depositions of **John Does 1-40**, to be identified by **CPA Padilla** and **AFOD Longoria** during Stage One. Petitioner anticipates that some or all of these witnesses currently reside in ICE custody at the PIDC at 27991 Buena Vista Boulevard, Los Fresnos, Texas 78566.

    b.  Petitioner anticipates each deposition taking no longer than 45 minutes to one hour.

## RELIEF REQUESTED

Based on the foregoing Petitioner respectfully requests the following relief:

1. Within three (3) days of receiving this Petition, issue an Order setting a hearing within 21 days pursuant to Fed. R. Civ. P. 27(a)(2).

2. Issue an Order authorizing depositions of the named persons listed in Paragraphs 40a and 40b, or any other designee agreed upon by the agencies' counsel and the Petitioner, to conduct Stage One of the proposed Rule 27 deposition proceeding;

3. Issue an Order authorizing depositions of the individuals identified as John Does 1-40 in Paragraph 41a;

4. Retain jurisdiction over this cause for the purpose of entering any necessary protective orders or adjudicated any disputes that may arise between Petitioner and any deponent;

5. Grant any other relief as may be necessary and proper.

Date: June 4, 2018                     Respectfully submitted,

                                  /s/ Carlos Moctezuma García
                                  **CARLOS MOCTEZUMA GARCÍA,** 24065265
                                  GARCÍA & GARCÍA, ATTORNEYS AT LAW, P.L.L.C.
                                  4905 A N. McColl
                                  McAllen, TX 78504
                                  (956) 630-3889
                                  CGarcia@garciagarcialaw.com

                                  /s/ R. Andrew Free*
                                  **R. ANDREW FREE, TN BPR No. 30513**
                                  LAW OFFICE OF R. ANDREW FREE
                                  P.O. Box 90568

Nashville, TN 37209
Tel. 844-321-3221
Fax: 615-829-8959
Andrew@immigrantcivilrights.com
*Counsel for the Plaintiff*
*\*Application for Appearance Pro Hac Vice filed*
*contemporaneously with this Petition*

## **Verification**

I, R. Andrew Free, an adult resident of the State of Tennessee being of sound mind and constitution, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that all allegations of fact in the foregoing Petition are true and correct to the best of my understanding.

Date:   June 4, 2018                          By: _____